JOSEPH BOXELL, Respondent, v. R. A. GRANT and H. F. Bee-
man, Copartners as Grant & Beeman Land Company, Appellants.

(171 N. W. 251.)

**Vendor and purchaser — covenant — measure of damages.**

In a written contract for the exchange of property where the defendants
exchanged a quarter section of land at the agreed price of $40 an acre with the
plaintiff for his certain stock of merchandise, the balance of purchase price
of land being settled for by taking plaintiff's promissory notes, and such
written contract among other provisions contained the following clause: "We
further agree within one year from date to find a buyer for said land at a
price not less than $40 per acre to said Joseph Boxell;" *held* that the same
constituted a binding covenant on the part of the defendants to sell the land
within one year. If the defendants failed to do so, they were liable in dam-
ages for the difference between the reasonable value of the land and $40 per
acre. After the expiration of the year, plaintiff sold the land for $5,080, and
the proof is sufficient to show that that was the reasonable value of the land
at the time plaintiff sold it; that the measure of damages was the difference
between that sum and $40 per acre; that the above clause in the contract was
relied upon by the plaintiff and to him constituted an inducement to make
the contract. It was one of the principal elements of it, and was not, as
claimed by defendant, a mere broker's agreement.

Opinion filed February 5, 1919. Rehearing denied February 24, 1919.

Appeal from the District Court of Hettinger County, North Dakota, Honorable *W. C. Crawford,* Judge.

Affirmed.

*Jacobson & Murray,* for appellants.

If the plaintiff could not recover against the defendants as vendees under this contract, then he cannot recover against them as brokers. See McCulloch v. Bauer, 24 N. D. 109.

"In an action by a vendor to recover damages for a breach of contract by the vendee, it is incumbent upon the former to establish by competent proof that, prior to the commencement of the action, he was ready, able, and willing to fully perform on his part, notwithstanding the fact that the vendee had informed the vendor of his inability to carry out the contract on his part." McVeety v. Harvey Merc. Co. 24 N. D. 245; Ink v. Rohrig (S. D.) 122 N. W. 594; Godfrey v. Rosenthal (S. D.) 97 N. W. 365.

In equity a good title means a marketable title, and such a title is necessary and sufficient. And according to the weight of authority the same is now true at law. 39 Cyc. 1452, 1454, 1458, 1460, 1465.

*M. S. Odle,* for respondent.

An order overruling a motion for judgment notwithstanding the verdict is nonappealable. Stratton v. Rosenquist, 37 N. D. 117.

The measure of damages for the breach of a contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. N. D. Comp. Laws 1913, § 7146; 8 R. C. L. § 22, p. 451; Hallen v. Martin, 167 N. W. 314; Winston v. Wells-Whitehead, 8 L.R.A.(N.S.) 255, and cases cited therein. See 4 R. C. L. p. 285, § 32.

GRACE, J. Appeal from the district court of Hettinger county from an order denying judgment notwithstanding the verdict or for a new trial and from the judgment, Honorable W. C. Crawford, Judge.

Grant & Beeman were, on the 4th day of August, 1913, residents of Mott, North Dakota, and were copartners engaged in the real estate business. The plaintiff also was at that time a resident of Mott and was the owner of a stock of groceries and some fixtures and furniture, and on the 4th day of August, 1913, the plaintiff and defendants en-

tered into a written contract for the exchange of the grocery stock and some of the fixtures, etc., for a certain tract of land located in Clay county, Minnesota. The following is the contract:

This agreement, made and entered into this 4th day of August, A. D. 1913, by and between Joseph Boxell, party of the first part, and the Grant & Beeman Land Company of Mott, North Dakota, party of the second part.

Witnesseth, that, whereas, the said Joseph Boxell agrees to make an exchange of his grocery stock, all furniture and fixtures now inside of the building, located on block 29 in the village of Mott, North Dakota, and used in the business, including all stocks, bakery outfit, horses, harness, buggy, delivery wagon, sleighs, and all counters and counter scales according to bill made out by the said Joseph Boxell and handed to J. B. Smith, including in addition to same the shelving on east partition, oil tanks, grocery counters, scales, and platform scales and ice cream outfit. In payment of the same the said Joseph Boxell agrees to take one quarter section of land located west of Ulen, Minnesota, in section five (5), which was inspected by the said Grant & Beeman Land Company at $40 an acre, which land is to be conveyed to the said Joseph Boxell by a contract for deed. All deferred payments to be paid out at the rate of $500 per year at six per cent (6%) interest. When the first instalment of $500 is paid by the said Joseph Boxell, he shall be entitled to a deed to said land, and shall at that time execute a mortgage covering the deferred payments then remaining unpaid.

Said Joseph Boxell further agrees that the above-described property to be exchanged by him for said land will be conveyed free and clear of all encumbrance.

Said Grant & Beeman Land Company agrees to do all in their power to get the deal through between the parties as soon as possible. Said Grant & Beeman Land Company is to receive a commission of $160 to be paid by the said Joseph Boxell as soon as the said Joseph Boxell sells the land at $40 per acre or more. Said Grant & Beeman Land Company having the right to sell the land at above-named price unless withdrawn from the market by said Joseph Boxell and in such case and at such time as said Joseph Boxell should decide to withdraw it from the

market at $40 an acre, the $160 becomes due and payable. We further agree within one year from date to find a buyer for said land at a price at not less than $40 per acre to said Joseph Boxell. In part of this agreement second parties are to lease said building for at least one year, at $75 per month.

In witness whereof, we have hereunto set our hands and seals the day and year first above written.

[Seal] Mrs. Abbie Boxell,
[Seal] Joseph Boxell,
[Seal] Grant & Beeman Land Company,
By H. F. Beeman.

In presence of:

Paul Bohn, Sr.

P. S. The above Grant & Beeman agree to complete deal in case above land has not been sold by Higley since July 22, 1913.

The plaintiff pleads reliance upon the promises, representations, and agreements of the defendants in the contract and the delivery of the grocery stock to them at the agreed price of $3,067, and the receiving in exchange the contract for deed to the N.E.¼ of section 5, township 141, range 45, Clay county, Minnesota, at the agreed price of $40 per acre, and, in addition to turning over the stock and fixtures described in the contract, he executed promissory notes to Otto C. Neuman, the owner of the land at the time of sale, for $3,333, and delivered the same to the defendants. The pleading shows that defendants received for their share of the transaction the stock of merchandise of the value as above set forth, and also a note for $333 made to Otto C. Neuman, but indorsed by him to the defendants. Complaint shows that the plaintiff placed the land upon the market and requested the defendants to sell the same for him in accordance with the agreement; that plaintiff kept the land on the market for sale for more than a year immediately subsequent to the date of the purchase; that the defendants during that time had the right and opportunity to sell the land at $40 per acre net to plaintiff, but have failed, neglected, and refused to do so at the price agreed upon in the contract or at any other price; that the plaintiff had not seen or inspected the land at the time of making the contract and relied upon the appraisal, judgment, and representations made to him in regard to the land by the defendants at the time of making the

contract; that the plaintiff, after receiving the contract for deed to the land, used his best efforts to sell and dispose of the same and realize upon his equity, and did all things possible to assist defendants to sell the land, and, after more than one year had elapsed from the date of the purchase of the land, plaintiff sold the land for the sum of $5,080. He claims damages in the sum of $1,320, the difference between the selling and the purchase price, and that no part of the same has been paid except $779.08, which was realized by a judgment aided by attachment in Clay county, Minnesota. He alleges a balance due of $540.92. The plaintiff further claimed damages for removal and sale by the defendants in violation of the contract of shelving on the west side of the storeroom in the sum of $75. The plaintiff, in his complaint, set forth two other causes of action which were by the court stricken out upon motion for a directed verdict.

The answer is a general denial. It admits the execution of the contract and alleges full compliance therewith. It alleges defendants' readiness and willingness at all times to perform their part thereof. It alleges reasonable care and due diligence in carrying out the agency with the terms of the agreement, and alleges the defendants did find a purchaser who was ready, able, and willing to purchase the land from the plaintiff within the time specified in the contract, and that plaintiff refused to sell the land to the purchaser. They further allege violation of the terms of the agreement by the plaintiff and the failure by him to perform his part thereof; that he withdrew the land from the market. Defendants further, in their answer, state they procured for the plaintiff a lease of the building at $75 per month for a year. Defendants plead a counterclaim of $160 for commission for finding a purchaser for the land.

The action was tried to the court and a jury. The verdict of the jury was for $453.20 in favor of the plaintiff and costs at $43.65. The verdict is amply supported by the evidence and is conclusive on the court as to all questions of fact submitted to it.

The appellant sets forth several specifications of insufficiency of evidence to support the verdict. He also sets forth a number of facts claimed to be conducively established by the testimony in his favor. We do not deem it necessary to set out all the specifications of the insufficiency of the evidence nor all the facts claimed to be proved in defend-

ants' behalf. They will be discussed under the more general classification selected by the appellant. The same is true of fourteen classifications of error made by appellant. The three main propositions relied upon by appellant are stated by him in his brief as follows:

"First, the defendants are not liable under their brokers' contract without a showing that they were negligent or did not use reasonable diligence or skill and industry to accomplish the object of their employment. There is no evidence of any negligence or lack of skill. Second, conceding that the defendants are liable, still the plaintiff has failed to prove any damages, among other things he has failed to show the reasonable value of the land at the time he sold it. Third, there is no evidence of any contract liability on the part of the defendants guaranteeing the plaintiff protection of the shelves upon which the third cause of action is based. There is no evidence that the defendants converted the shelves. No evidence of the reasonable value of the shelves at the time of the alleged taking."

With reference to the first proposition, the defendants claim they were under no liability under the contract because they maintain they did not agree to pay the plaintiff $40 per acre within one year, but simply agreed to find a buyer who would pay not less than $40 per acre within one year. They claim it was incumbent upon the plaintiff to show something more than a failure on the part of the defendants to find a buyer; that it was incumbent upon the plaintiff to show negligence and bad faith on the part of the defendants. We are wholly satisfied there is no merit in the contention. The appellant in his brief uses the following language: "Suppose the contract did not specify $40 an acre, but just simply stated that they were to find a buyer within a year, could the plaintiff then hold the defendants for the reasonable value of the land?"

That is supposing something that is not in this case. A reference to the contract will disclose that the defendants agreed with the plaintiff to find a purchaser for the land within one year from the date of the contract, at a price not less than $40 per acre. This is a part of the contract which, it can be readily understood, would have much influence upon the mind of Boxell in inducing him to enter into the contract. Boxell having not seen the land, and the contract itself disclosing that the land was inspected by Grant & Beeman Land Company at

$40 per acre, and coupled with this, the positive agreement to which we have referred, justified plaintiff in concluding that the land was worth $40 an acre, and he might reasonably conclude that the value of the land appearing to be $40 an acre, it would be quite probable that the defendants would find a buyer for the land at a price at not less than $40 an acre within a year. He had a right to assume, from all the foregoing, that the land at the date of the contract was worth $40 an acre, and we think the testimony shows that that is what he paid for it through Grant & Beeman. The plaintiff relied upon the representations and agreements, and, while so relying thereon, parted with his own property and notes to the value of $6,400 or $40 an acre for the land. The defendants were required by the contract had during the year to find a buyer for the land at a price of not less than $40 per acre to Joseph Boxell. They were in no way prevented from doing so by the plaintiff. Plaintiff himself had made reasonable effort to dispose of the land during the year following the making of the contract, and, after the expiration of the year, did so for the sum of $5,080. From all that appears in this record, plaintiff seems to have acted in entirely good faith toward defendants and gave them every opportunity to make good under the agreement to sell the land within a year for $40 per acre. Plaintiff also appears to have made a reasonable effort to sell the land for all that it would bring. There is no bad faith or fraud charged against him in the making of the sale, and we believe, from what is disclosed by the record, it was sold by Boxell for at least its market value, if not more. Especially is this true when we consider the letter from the defendants to Boxell of date of September 9, 1914, which clearly shows that the price of the land at the date of the contract was inflated. We quote so much of the letter as is material to this question:

"We have your letter of recent date in relation to the trade that you made with Mr. Neuman something over a year ago, and note that you would like to come back here again and run a store, providing we will start you up in business by furnishing you a stock of goods to go on. You state that the land you traded for is not worth $40 an acre, and that it is not as represented. You can make that statement in a letter, if you choose, but you know well that the land is actually as recommended and that our part of the transaction was carried out to the letter. We admit the land will not sell for $40 an acre cash, but it will

come nearer to cashing up at the figure traded for than the old stock of goods and fixtures will that you traded. We presume that you must have thought us all a bunch of chumps at the time we traded, to have taken your old stock in here at three times what it was worth and four times what we got out of it, and sell you land in exchange at a close cash figure. We had thought that you were possessed of enough ordinary intelligence to realize that if you inflated your goods on a trade that the other fellow must, of necessity, raise on his price, if he was not to lose out altogether. Now you were well pleased with the land when you looked it over with Mr. Higbie, and any person of good common sense will tell you that $40 an acre for that land is not an unreasonable trade price. It would appear that you would have it, that you are the only fellow who is permitted to inflate values on a trade, which is customary the world over.

"We told you that we could sell your land for the price traded for, and we could have sold it on the crop payment plan, but you insisted that you would not sell it on those terms. We did not agree to sell it for cash as you insisted afterwards, and we cannot figure where you have any holler as far as we are concerned, as we have fulfilled our part of the program to the letter. If you think that you can get a piece of money out of us, why just go ahead and we will show you where you are mistaken."

The tone of this letter would seem to indicate that it would have been likely impossible for the plaintiff to have sold the land for any greater price than he did sell it. It also shows that it is not likely that the defendants could have sold the land for $40 an acre during the year however much they may have tried. As we view the agreement, no terms being stated therein, the selling price would be presumed to be cash, and not crop payment or otherwise. Plaintiff's measure of damages, under these circumstances, was the difference between the price which the defendants agreed to sell the land for within the year and upon which agreement plaintiff relied, and the price for which the land actually was sold, viz., $5,080.

Plaintiff was not required to show bad faith or negligence on the part of the defendants. He had a right to rely upon his contract. If the defendants did not procure him a buyer for the land within the year as they had in writing agreed to do at the time they sold the land

to him at $40 an acre, and receive pay therefor in the manner above stated, he could recover his damages, which would be measured by the difference between the approximate real value of the land and $40 per acre. From all the testimony, facts, and circumstances in the case, $5,080 would seem to be about the actual value of the land at the time plaintiff sold it. As we view the matter, the agreement in the contract by the defendants to sell the land within one year at $40 per acre was not a broker's contract, though to a certain extent it may partake of the nature thereof, but surely it was one of the inducing causes which caused the plaintiff to enter into the entire transaction and was a covenant upon which plaintiff had a right to rely and did rely; and, by relying upon such covenant, he had a right to assume that he was certain some time during the year in question to receive $40 per acre for the land; for the defendants, in making the deal, had agreed in writing they would find a purchaser for the land at that price. They did not in the contract say they would try to find a purchaser or would make their best efforts to find a purchaser, but contracted to find one. The agreement to find a buyer for the land within a year at $40 an acre was a material part of the contract, which the plaintiff was entitled to have the defendants perform, or, in the event of the nonperformance which would constitute a breach of the contract, he had a legal right to a suit for damages by reason thereof, and the jury has fixed the damages and we think correctly.

It is also further claimed by the defendants that the plaintiff withdrew the land from sale during the year, and they also claim they offered during the year to purchase the land from Boxell at $40 per acre upon terms stated by Grant in his testimony. All this is denied by Boxell in his testimony. Thus there is a conflict in the testimony and the question was one properly for the jury. Its verdict was in favor of the plaintiff and necessarily disposed of these questions of fact. The jury heard all the testimony with reference to the value of the land. Boxell testified that at the close of the year which Grant and Beeman had to sell the land, it was worth $19 per acre. About six months after Boxell had entered into the contract, he went on the land, and his testimony is to the effect that the value of the land at that time was $19 per acre. Beeman's testimony is that at the time of the contract, the land was well worth $40 an acre. At the expiration of the year, he

said, "We figured we could get $45 for it if we got hold of it." Grant's testimony is to the effect that the land increased in value after Boxell became the owner.

The following question was asked him:

Q. What would you say that land was worth now an acre?

A. About $55 or $60 an acre.

The jury heard all this testimony and evidently did not believe the testimony of Grant and Beeman. They apparently did believe Boxell's testimony and returned a verdict in his favor. The letter which we have quoted in full also throws some light on the value of the land at the time of the contract. We think the effect of the jury's verdict is to find that the land was sold for what it was reasonably worth at the time Boxell sold it.

There remains but a single question for our consideration, and that is with reference to the $160 commission referred to in the contract to be paid to the defendants under certain conditions named in the contract. The court gave full instructions with regard to this item, all of which were entirely favorable to the defendants. The instruction, we believe, was erroneous, but of this defendants cannot complain, for it was altogether favorable to them. The plaintiff does not complain and is satisfied with the verdict as it stands. The trial court referred to this item very frequently in its instruction. The following may be taken as a summary of the instruction on this point: "Now, in any event, that particular item under this contract whether he withdrew it from sale or whether they sell it for him, the defendants are entitled to the sum of $160, so, in any event, if you find in favor of the plaintiff upon that item, the defendants are entitled to a further sum of $160, if they sell it or if it is withdrawn from the market, so it would be a net price of $6,240, so that they would be entitled to a credit of $160 upon that item. If you find in favor of the plaintiff upon the same as provided in this contract, and this contract is what is being sued upon and the terms of this are binding upon both parties."

That instruction is in square conflict with the conditions upon which the commission was to be earned as contained in the contract. The contract says, "Said Grant & Beeman Land Company is to receive a

commission of $160, to be paid by the said Joseph Boxell *as soon as the said Joseph Boxell sells the land at $40 per acre or more.*" No commission could accrue to the defendants, therefore, under this term of the contract until Boxell had sold the land for $40 per acre or more. Another condition of the contract is that "said Grant & Beeman Land Company have a right to sell the land at above-named price unless withdrawn from the market by said Joseph Boxell, and in such case and at such time as said Joseph Boxell should desire *to withdraw it from the market at $40 per acre, the $160 becomes due and payable.*" Boxell did not withdraw the land. The jury must have so found, and no commission is earned under this condition of the contract. Then follows the condition wherein the defendants within the year from the date of the contract agreed to find a buyer for the land at a price at not less than $40 per acre to said Joseph Boxell. It is clear that the defendants have not brought themselves within the terms of the contract whereby they would be entitled to the $160 commission. However, as above stated, the plaintiff does not complain of the instruction in a manner so as to express a desire for a reversal of the judgment on that ground, but does, in his brief, assert that it is erroneous. He, however, is satisfied with the verdict, and, as before stated, defendants cannot complain.

The question with reference to the shelving was submitted to the jury. Plaintiff claimed that there had been moved therefrom by the defendants, in violation of the contract, the shelving of the west side of the storeroom. Testimony with reference to this matter, as well as the first cause of action, was submitted to the jury, and they have returned a verdict in favor of the plaintiff. We think there is ample evidence to sustain the verdict. We have examined the errors assigned by the appellant and all the instructions given by the court, and believe there is no reversible error of which the defendants can complain.

Judgment and orders appealed from are affirmed, with statutory costs.

BIRDZELL, J. I concur in the foregoing opinion in every respect, except that portion which relates to the instruction given by the trial court. I think the instruction was correct.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur in result.